BROCKENBROUGH, J.,
delivered the opinion of the court. Objections to indictments under the statute concerning forgery *and counterfeiting, have several times been made before this court. In Rasmick’s case, 2 Virg. Ca. 356, the indictment charged, that the defendants “did falsely make, forge and counterfeit, and did cause and procure to be f alsety made, forged and counterfeited, and did willingly act and assist in the said false making, forging and counterfeiting” &c. The court decided, that the indictment was sufficient on the ground, that it pursues the words of the stabile, and that it is a transcript from certain approved forms to be found in the second and third volumes of Chitty’s treatise on criminal law, founded on statutes similar to our own. In Huffman’s case, 6 Rand. 685, this subject again came before lije court. That was a motion to quash the indictment, before the jury were empaneled. An objection was made to the first count, that it did not set forth “the person, or persons whom the prisoner caused or procured to forge the instrument, and those with whom he willingly acted and assisted in the forgery.” The objection did not prevail; and the court said, that where an indictment charges an offence in the words of a statute creating the offence, the indictment, as to the description of the fact, is good; and relied upon the authority of certain forms to be found in Archbold and Chitty, in which are found indictments upon the english statute of forgery of 52 Geo. 3, ch. 138, which our statute very much resembles. It has been ¡ urged by the counsel for the present petitioner, that these forms ought not to be relied on, since they do not appear to have undergone the adjudication of any court in England. It might be a sufficient answer to this remark, that they are published to the world as forms which have been used in the english courts without objection, for a long series of years; that they have been adopted after much deliberation; that, in the numerous prosecutions for forgery, and passing and uttering base coin, and counterfeited notes and other instruments, which have occurred in that country, these are the forms which have been uniformly used; and that under them many individuals have suffered the penalty of death. There is, however, at least, one case, in which the subject was brought before the ^twelve judges of England; The King v. Holden and others, 2 Taunt. 334. In that case, the count charged, that the prisoner feloniously “did dispose of and put away a certain false, forged and counterfeited bank note [setting out the tenor] with intent to defraud the governor and company of the bank of England, he the prisoner at the time &c. well knowing” &c. The objection made to the indictment was, that it was insufficient as being too general, neither stating in what manner nor to whom the notes were disposed and put away. The same case is reported in 2 Leach, 1019, and in Russell & Ryan’s Crown cases, 154. Taunton says, the court did not pronounce any opinion, but the prisoners were executed ; which would not have been, unless the court had decided that the indictment was right; and the other reporters of the case, say, that the twelve judges unanimously decided that the conviction was right. It has also been decided, that it is not necessary to set forth the particular manner by which the fraud was effected, which is a mere matter of evidence, although in all these cases of forgery, or passing or uttering base coin, or counterfeited notes, the intent to defraud some person or persons, or body politic or corporate, must be set out. 3 Chitty, 1043, citing 1 Leach, 77. Taking these approved precedents of indictments as evidences of the law, supported as they are by the decision of the twelve judges in the case of Holden and others, we think there can be no doubt, that, in all cases of tendering, offering, passing or uttering counterfeit notes, the indictment is sufficiently certain, if it pursue the words of the statute; if it sets forth the tenor of the instrument, thereby giving it a precise certainty; if it sets forth the scienter, and the intent to defraud some person, or corporate body by name. If the indictment moreover sets forth the person to whom it is tendered or passed, the degree of certainty and precision is greater than (it would seem) is absolutely essential. Nor can we see anjr real difference between such cases, and those of “causing and procuring to be offered to be passed,” which is the charge in the first count under consideration. The statute is closely followed, *the tenor of the notes fully set out, the person to whom they were offered to be passed stated, and the intent to defraud and injure a particular individ *504 ual distinctly charged. It was urged, that indictments for this offence, ought to pursue the form of indictments charging defendants with obtaining money by false pretences, which are not sufficient without stating what were the particular false pre-tences. The only statute that we have on the subject of cheats, is the statute 1 Rev. Code, ch. 153, p. 577, against those who counterfeit letters or privy tokens in other men’s names, and which is taken from the statute 33 Hen. 8, ch. 1. In prosecutions under that statute, it is readily admitted, that the counterfeit letter by which the cheat is effected, must be set out according to its tenor; and that is required under the statute now under consideration ; so-tliat the precision which we require is just as great as that required in that instance. So the privy token should be stated, that the court may judge whether it is such false token as the statute requires should be used, to bring the party within its terms. The english statute of 30 Geo. 2, concerning cheats by false pretences, uses those general words alone; the courts have required, that the particular pretences should be set out in the indictment, because there may be some false pretences not within the statute, and the court should see what they were. 2 East’s C. L. p. 837. The false pretences interdicted by that statute may be mere verbal representations, than which nothing is more evanescent; and unless the indictment fixes the character of those representations, there is nothing which the accused can be required to answer with any degree of certainty. But where a man is charged, that “he procured to be offered to be passed” a certain counterfeit bank note the tenor of which is set out, his attention is drawn to that particular thing which is offered, and the court cannot help seeing, that the procuring of the offering to be passed of that identical thing, is within the statute. But, however it may be as to the statute against false pretences, there is no doubt, that indictments against persons for forgery, and causing and procuring the forgery to be effected, *are in daily use in England, under a great, variety of statutes, and that, in no instance, does the indictment charge the accused with having caused or procured any particular person to commit the forgery. Convictions and condemnations have repeatedly taken place under such indictments. See 3 Chitty, 1049, 1052, 7, 1060; 2 Leach, 732, 827. We think the objection to the first count cannot be sustained.
The objection to the second count is, that it alleges the notes to have been passed to the negro Milus, not to defraud or injure either him or his master, but to defraud or injure a'corporate body, the bank of the IT. States. It is not contended by the counsel, that a note cannot be passed to a slave: although a slave is not capable in law of holding property, except for his master, yet we know, in point of fact, that he may hold it, and that he is a person who may be dealt or traded with; and the law admits sue h fact, because we have a variety of laws, prohibiting free persons from dealing or trafficking with slaves without the consent of their masters. The objection seems to be, that the count charges the passing to the slave, with intent to defraud the bank of the U. States; which is thought to be impossible. The objection would be equally good, if it was passed to a free person : there is no more impossibility in the one case, than in the other. If Milus had been a free man, the count could not be bad; if charged that the note was passed to him, with intent to injure and defraud the president, directors and company of the bank, because it is within the express words of the statute. The evidence might not have supported the charge, but the charge itself could not be objected to. Neither can the objection be sustained where the passing is to the slave. But is it impossible, that there should be, in any act of passing a counterfeit note, an intent to injure or defraud the corporate body whose notes are counterfeited? The primary intent of every man who forges notes, or passes them knowing them to be forged, is to benefit himself: he intends to increase his own fortune by getting something for nothing. When he passes a counterfeited note of a hundred *dollars to another person, he defrauds and injures that person, by obtaining from him, for a worthless piece of paper, property or money to the amount of a hundred dollars. The effect of the passing, is to injure the person with whom he deals; but his intent is to benefit himself. He knows, that the direct consequence of this act of felony, is to injure and defraud his neighbour; he is reckless of the consequence. Then the law steps in, declares, that every man shall be presumed to intend that which is the necessary consequence of his own acts. In this way only, can the law be understood which makes it felony to pass a counterfeit bank note to another, with intent to defraud that other. It is the same thing when the law speaks of the intent to injure or defraud the corporate body. The natural and inevitable consequence of counterfeiting bank notes, or of passing bad notes, is to injure the institution whose notes are so counterfeited or passed. It affects the interest, it impairs the credit of the bank. The man who passes them, knowing them to be counterfeit, is presumed to intend this which is the necessary consequence of his so passing them, and he therefore comes within the provision of the statute. In support of this vi'ew of the law, we have the authority of the english judges. Rex v. Mary Mazagora, Russell & Ryan, 291. That was an indictment for disposing of a forged bank note, with intent to defraud the governor and company of the bank of England. It appeared in evidence, that the prisoner disposed of this note and eight others,'with a full knowledge that they were all forged. An inspector of the bank proved, that they might readily impose on others, but not on the bank inspectors, who always examined the notes offered at bank; and that it was not a probable consequence of the prisoner’s act, that the bank would be defrauded by means of these notes. Bayly, J., directed the jury to say, what their opinion was as to the prisoner’s intent to defraud the bank: the *505 jury said, the prisoner intended to defraud ■whoever might take the notes, but that the intention to defraud the bank, did not enter into her contemplation. The judge referred this question for *consideration : Whether an intention to defraud the bank ought to be inferred, when that intention was not likely to exist in the prisoner’s mind, and where the caution ordinarily used would naturally protect the bank from being defrauded? The judges decided, that the prisoner must be taken to have intended to defraud the bank, and, consequently, that the conviction was right. We are all of opinion, that this count, as well as the first, is good. And in these opinions, we are unanimous.
The next question presented to tis, is, Whether a new trial ought to have been granted to the prisoner, on account of the incompetency, or want of credibility of the principal witness, whose evidence, mainly, produced the conviction? In Byrd’s case, 2 Virg. Ca. 490, this court gave a very decided opinion on the competency of an accomplice as a witness, at any time before his conviction. The question of his credibility may surely be left to the determination of the jury, under the superintendence of the judge who tries the cause. The credit of this witness has been affirmed by the jury, and sanctioned by the judge, who heard and saw him. This court sitting as an appellate court, and knowing nothing of the evidence or of the witness, except as it appears on the paper, feels itself very incompetent to decide on the credibility of the testimony. Unless it was irresistibly clear, that the conviction was wrong, this court would not disturb it. We are unanimously of opinion, that no new trial should be granted in this case on that ground, and we give this opinion, without deciding on the propriety of the judge below stating the proofs which had been given on the trial, as has been done here.
The-last objection arises from the bill of exceptions to the opinion of the court disallowing the prisoner’s challenge to the juror for cause. It was argued, that Sprouce’s case, 2 Virg. Ca. 37S, is decisive oE this; and that Wiant, who was there j called as a juror, had not formed and ex- J pressed a more decided opinion than did the juror here. But this *court is of opinion, that there is a difference between the cases. There the juror had heard the subject of the trial frequently in the country; had formed a pretty substantial opinion, and expressed it more than once; and this court understood the remark as meaning, that “he had made tip, and expressed, a decided opinion.” Here the juror says, that he had expressed “an opinion;” he does not say, he had expressed “a decided opinion.” It may have been but little more than a vague impression. If i t was an opinion formed without much deliberation, without much attention to the facts reported to him, or without reflecting on the various rumours he may have heard, it might be called an opinion, but surely it was one which was slight, which would readily yield to evidence, and which could not be said to be fixed, deliberate, decided. If the opinion was formed, upon the hypothesis that certain facts were true, without knowing whether they were true or not, then the opinion was merely hypothetical, and cannot be said to have been a “decided” opinion. In this case, the juror gives his own account of the strength or weakness of his opinion. He is called on (most probably by the prisoner) to give an account of the state of his mind: his own conscience is referred to; and as that is the only evidence we have on the subject, we must be guided by it. In Lithgow’s case, Id. 297, the juror Irvine said, that although he believed he would be guided by the evidence, yet he would be “unwilling to trust himself.” But here the juror says, he does not think “that the opinion so formed would have any influence on his mind in trying the case.” It must then have been a slight opinion : it could not have the character of fixedness, deliberation, decision. It could not with propriety be denominated “a decided opinion.” This case is more like Pollard’s case, S Rand. 658, than like Sprouce’s. The court is of opinion, that the bill of exceptions shews no error; but two of our brethren, judges Semple and Upshur, dissent from this opinion.
Writ of error denies.